Clara EUGENE, Plaintiff,

v.

Donald H. RUMSFELD, Secretary,
Department of Defense,
Defendant.

No. CIV. A. H–99–4078.

United States District Court,
S.D. Texas.

Oct. 11, 2001.

Ronald J. Merriweather, Houston, TX, for Plaintiff.

John B. Kinchen, Assistant U.S. Attorney, Elizabeth F. Karpati, Assistant U.S. Attorney, Vernon L. Lewis, Assistant U.S. Atty, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court are Defendant Donald H. Rumsfeld, Secretary, Department of Defense's ("Rumsfeld") Motion for Partial Dismissal (# 35) and Motion for Summary Judgment (# 41) as well as Plaintiff Clara Eugene's ("Eugene") Motion for Partial Summary Judgment (# 43). Both parties seek summary judgment regarding Eugene's claims of race and national origin discrimination brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000h–6, age discrimination under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621–634, and retaliation in violation of both statutes. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Rumsfeld's motion for partial dismissal should be granted in part, that Rumsfeld's motion for summary judgment should be granted, and that Eugene's motion for partial summary judgment should be denied.

## I. *Background*

Eugene is a fifty-six-year-old, African–American female who was first employed by the federal government on August 13, 1975. From June 1994 until her separation from federal service in August 1998, following a reduction-in-force ("RIF"), she worked at the Defense Logistics Agency ("DLA"), Defense Energy Support Center ("DESC") as a Transportation Assistant (Office Automation), job grade GS–6, series GS–2102–06, at the Defense Fuel Office ("DFO") in Houston, Texas. The DLA is part of the United States Department of Defense ("DOD"). Her direct supervisor from July 1997 until her termination was John Guillochon ("Guillochon"), District Team Chief at the DFO in Houston. Eugene's duties included administrative tasks such as data entry, keeping automated reports on the locations of rail cars that were transporting fuel for the agency, preparing route orders specifying the rates for the transportation of fuel, and dealing with customers.

In early 1997, the DFO in Houston determined that a reorganization was necessary to increase its efficiency and effectiveness in view of an agency mandate to reduce staffing by 28% by 2001. DFO management permitted an employee reorganization team to formulate the plans for the reorganization, and the employees enlisted the services of an external, independent consultant, Larry Bowman ("Bowman") of the American Productivity and Quality Center ("APQC"). While management employees were not permitted to attend, all non-management employees were invited to the reorganization meetings, and Eugene attended some of them. On February 12, 1998, as a result of the APQC's findings, the DFO sent a letter request to the Headquarters Defense Distribution, DESC, to eliminate through a

RIF all seven lowest-graded positions, GS–5 through GS–7, jobs involving administrative and technical support duties, which request was approved on February 17, 1998. Eugene learned during the month of February 1998 that her position would be abolished.

On March 6, 1998, prior to implementing the RIF, the DLA issued a letter to the affected employees, including Eugene, offering Voluntary Separation Incentive Pay ("VSIP") of up to $25,000.00 for the employees in question to retire or resign voluntarily from federal employment and an opportunity under the Voluntary Early Retirement Authority ("VERA") to take an early retirement at a reduced annuity. The letter provided a window of acceptance from March 6 through March 20, 1998, and required accepting employees to retire or resign between March 20 and March 31, 1998. Guillochon hand-delivered this letter to Eugene on March 9, 1998, but she did not take advantage of the offer. In addition to VSIP and VERA, the impacted employees were offered early registration in the Department of Defense Priority Placement Program ("PPP"), an automated system that gives employees who have been notified of an impending RIF an opportunity to seek employment in other federal agencies. Out of the five affected employees, all but Eugene registered upon being notified of the program. Because one employee, Irma Pannett Schubert ("Schubert"), a white female who was approximately sixty-five years of age at the time, accepted the VSIP offer and one of the impacted positions was already vacant, the RIF process began for the five remaining affected positions. These positions were held by Eugene, a black female born January 26, 1945; Peggy Nolan ("Nolan"), a black female born May 23, 1951; Theresa Pollard ("Pollard"), a white female born September 28, 1964; Mary Jane Dover ("Dover"), a Hispanic female born May 29, 1952; and Iola Yvonne Woodard ("Woodard"), a black female born June 9, 1955. It appears that Eugene subsequently registered with the PPP following the RIF.

The RIF process, as explained by Rumsfeld, typically entails a competition among employees for positions remaining in the organization based on factors such as qualifications, tenure, seniority, veteran's preference, and performance appraisals. In this situation, however, there were no positions remaining in the organization for which the five employees subject to the RIF were qualified. As a consequence, on May 11, 1998, all five employees were issued RIF separation notices. Two of the employees, Nolan and Woodard, resigned from federal service and received separation pay but no federal service annuity. Two other employees, Pollard and Dover, were eventually placed with other federal agencies through the PPP or by individual application for employment. The effective date of the RIF was July 14, 1998. Eugene obtained a thirty-day extension, and, on August 13, 1998, elected to retire early. Upon her retirement, she qualified for and began receiving a federal service annuity. Since that date, she has worked a total of three to four weeks in temporary, non-government jobs.

When Guillochon hand-delivered the RIF notice on March 9, 1998, he also presented Eugene with a performance appraisal rating her "Minimally Acceptable" for the period April 1996 through December 1997, signed by him and Captain Sharon McKenzie ("McKenzie"), the Commander of the DFO in Houston. On March 10, 1998, Eugene filed an employee grievance under the agency's negotiated procedure complaining that she had erroneously received a "Minimally Acceptable" performance appraisal on March 9, 1998, and that the appraisal incorrectly listed her

title and series as Transportation Clerk, Office Automation GS–2005–06. As a result of the grievance, she was issued a new performance appraisal on April 22, 1998, in which she was rated "Fully Acceptable" and her title and series were corrected to Transportation Assistant, GS–2102–06.

On April 10, 1998, Eugene contacted the Equal Employment Opportunity ("EEO") office of the DLA, alleging race, national origin, and age discrimination at the Houston DFO. Eugene complained to the EEO that she had been assigned an overabundance of work that was normally performed by employees at the GS–11 or GS–12 level, that she received a VERA/VSIP letter, that Guillochon had denied or had not responded to her requests to note her additional duties on her performance plan, that she received a RIF letter with an attached minimally acceptable performance appraisal, and that there was an additional critical element on her performance plan not shared by others on her team at her grade level. The complaint was not resolved and, on June 22, 1998, Eugene filed a formal complaint of discrimination with the DLA, alleging race, color, age, and sex discrimination. In addition to the complaints raised in her grievance and her informal complaint, she complained of reprisals for speaking out about injustices, an unequal distribution of typical duties as well as added duties, a higher volume of work when other employees' work volume was reduced, the receipt of a $500.00 performance award rather than a $1,000.00 award, and the fact that McKenzie had signed her performance evaluation when she did not become Guillochon's superior until December 1997.

On August 23, 1998, the DLA Administrative Support Center sent Eugene an Acceptance/Dismissal Letter of Issues, stating that it would investigate whether she had been discriminated against based on her race, color, age, or sex when:

1. Since July 1997 to present, you have been assigned GS–11/12/13 duties, in addition to your Transportation Assistant duties. Specifically, you have been placed in a group with heavy concentration of Transportation Movement work (over 50%) that was being done by a GS–12 and GS–13 and you, as a GS–6, have been made responsible for this work.

2. On May 11, 1998, you received a Reduction in Force (RIF) letter.

The agency dismissed as moot the claims that she had previously raised through the internal grievance procedure in view of the April 22, 1998, correction of the documents at issue. It also dismissed her complaint that she received the letter offering VERA and VSIP on March 9, 1998, for failure to state a claim, explaining, "You have failed to show how this allegation has caused you harm or adversely affected the terms and conditions of your employment." The agency dismissed as untimely her claims regarding her being the only employee on her team at her grade level who had an additional critical element in her Position Performance Plan dated June 2, 1997, and her receipt of an electronic mail ("e-mail") communication on October 24, 1997, advising her that a higher-graded coworker was taking back previously assigned duties, because Eugene had failed to seek EEO counseling within forty-five days of the actions. On August 24, 1998, Eugene appealed the dismissed issues, and, on November 12, 1998, the agency agreed to consider her claim regarding the additional critical element in her Position Performance Plan dated June 2, 1997, having accepted her contention that she did not learn of that action until March 8, 1998, and, thus, sought EEO counseling within the forty-five-day period.

On November 9, 1999, the Office of Federal Operations of the Equal Employment Opportunity Commission ("EEOC") upheld the agency's dismissals and notified Eugene of her right to file a civil action. In its decision, the EEOC informed Eugene that her contentions regarding her minimally acceptable performance appraisal of March 9, 1998, and the incorrect listing of her title and series on the appraisal were barred under 29 C.F.R. § 1614.301(a). This regulation permits allegations of discrimination to be raised in a negotiated grievance procedure, the avenue Eugene successfully pursued, or through the EEO administrative process, but not both. Despite Eugene's assertion on appeal that her receipt of the March 9, 1998, letter offering VERA and VSIP caused her depression and stress, the EEOC noted that the letter merely offered early retirement to interested employees and that the agency's dismissal of her claim for failure to state a claim was proper. Finally, the EEOC upheld the dismissal of her claim regarding the e-mail for failure to seek EEO counseling within the required forty-five-day period.

■ On December 20, 1999, Eugene instituted the current action in federal court, alleging race, national origin, and age discrimination. In her complaint, as amended on August 14, 2000, Eugene asserts the following claims: she was wrongfully denied promotions when she was not promoted and/or rehired to fill two Inventory/Traffic Management SPEC GS 301–5/7 potential GS–11 positions; she was given undesirable assignments; she was assigned lower-grade-level work at times and an overabundance of work at other times; she was subjected to false accusations, criticism, ridicule, and an erroneous performance review; she was denied performance rewards; she was denied VERA and VSIP due to the erroneous perfor-

mance review; her unemployment compensation was illegally contested; the DLA was negligent in the hiring, promotion, and retention of Guillochon; and she was retaliated against for engaging in protected activity. While, in her complaint, Eugene purports to base her claims on national origin as well as race and age discrimination, she does not specifically identify her national origin. Moreover, she does not address the national origin claims in her motion for partial summary judgment or in her response to Defendant's motion for summary judgment, having seemingly abandoned them. Eugene also initially brought a claim for race discrimination under 42 U.S.C. § 1981. As explained in the court's prior ruling on Defendant's motion to dismiss additional defendants, dated March 26, 2001, "claims of racial discrimination in employment brought by federal employees under § 1981 are preempted by Title VII." In her response to Rumsfeld's motion for partial dismissal, Eugene concedes that she has no viable claim under § 1981.

Rumsfeld answered the complaint on September 5, 2000, filed a motion for partial dismissal on May 11, 2001, and filed a motion for summary judgment on June 15, 2001. On June 15, 2001, Eugene filed a motion for summary judgment. While Eugene submits as evidence Rumsfeld's response to her request for admissions, arguing that they should be deemed admitted because they were not signed by the attorney of record, the court, on June 15, 2001, rejected this argument and ruled that "the requested admissions are not deemed admitted." Additionally, in her response to Rumsfeld's motion for partial dismissal, Eugene explains that she is not bringing a claim for the negligent hiring and supervision of Guillochon but, instead, has listed these contentions as factors purporting to prove her discrimination claims.

II. *Analysis*

A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which the movant believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321–22; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321; *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997), *cert. denied*, 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999);

*Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas,* 190 F.3d 310, 314 (5th Cir.1999); *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir. 1998); *Marshall,* 134 F.3d at 321. The evidence is construed "in favor of the non-moving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999); *accord Little,* 37 F.3d at 1075 (*"[w]e do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."* (emphasis in original) (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990))).

Furthermore, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Hart,* 127 F.3d at 435; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to the case on which the nonmovant bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner,* 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Burden of Proof Under Title VII and the ADEA*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.,* 845 F.2d 108, 111 (5th Cir.1988) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)).

The ADEA similarly provides that "it shall be unlawful for an employer ... to

discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Reeves,* 530 U.S. at 141, 120 S.Ct. 2097; *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 654 (5th Cir.1996); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir. 1996); *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 149 (5th Cir.1995), *cert. denied,* 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996); *EEOC v. Louisiana Office of Community Servs.,* 47 F.3d 1438, 1443 (5th Cir.1995); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). In essence, the ADEA makes it unlawful for an employee, who is at least forty years old, to be discharged or otherwise subjected to an adverse employment action because of his or her age. *See Rutland v. Moore,* 54 F.3d 226, 228 (5th Cir.1995) (citing 29 U.S.C. §§ 623(a), 631(a)). "Congress expressly declared that the purposes of the ADEA were 'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.' " *Wamsley v. Champlin Refining & Chem., Inc.,* 11 F.3d 534, 541 (5th Cir.1993), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995) (citing 29 U.S.C. § 621(b)).

"A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence." *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir.2000); *accord Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213, 1216 (5th Cir.1995). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973)." *Russell,* 235 F.3d at 222; *see Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Evans v. City of Houston,* 246 F.3d 344, 350 (5th Cir.2001). This method of analysis is utilized for both Title VII and ADEA claims. *See id.; Russell,* 235 F.3d at 222 n. 3; *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 318 (5th Cir.1997); *Woodhouse v. Magnolia Hosp.,* 92 F.3d 248, 252 n. 3 (5th Cir.1996); *Meinecke v. H & R Block,* 66 F.3d 77, 83 (5th Cir.1995); *Bodenheimer,* 5 F.3d at 957 n. 4. "The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both statutes." *Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir. 1999) (citing *Meinecke,* 66 F.3d at 83). Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Russell,* 235 F.3d at 222; *Wallace,* 80 F.3d at 1047 (citing *Meinecke,* 66 F.3d at 83); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994) (citing *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089). " 'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.' " *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir.1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985)).

■ Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *McDonnell Douglas Corp.,* 411 U.S. at 802,

93 S.Ct. 1817; *Rios v. Rossotti,* 252 F.3d 375, 377 (5th Cir.2001); *Pratt v. City of Houston,* 247 F.3d 601, 605 (5th Cir.2001); *Evans,* 246 F.3d at 354; *Okoye v. University of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512 (5th Cir.2001); *Davis,* 14 F.3d at 1087; *see also Marcantel v. Department of Transp. & Dev.,* 37 F.3d 197, 199 (5th Cir.1994). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 902 (5th Cir.2000). "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer,* 169 F.3d at 966 (quoting *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742); *accord Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], ... and the sole remaining issue [is] 'discrimination *vel non.*'" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Hicks,* 509 U.S. at 510, 113 S.Ct. 2742; *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)); *see Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 402 (5th Cir.2001); *Russell,* 235 F.3d at 222. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks,* 509 U.S. at 507–08, 113 S.Ct.

2742; *Crawford,* 234 F.3d at 902; *Vadie v. Mississippi State Univ.,* 218 F.3d 365, 372 (5th Cir.2000), *cert. denied,* 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 772 (2001) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089); *Marcantel,* 37 F.3d at 200. "[I]n attempting to satisfy this burden, the plaintiff ... must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks,* 509 U.S. at 515, 113 S.Ct. 2742. "[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). "In making this determination, a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Crawford,* 234 F.3d at 902 (quoting *Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097).

"[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (emphasis in original); *accord Blow v. City of San Antonio,* 236 F.3d 293, 297 (5th Cir.2001). "[M]ore likely than not, a showing of pretext will lead to an inference of discrimination." *Russell,* 235 F.3d at 223 (citing *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097).

The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a

suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*Hicks,* 509 U.S. at 511, 113 S.Ct. 2742 (emphasis in original). Hence, a plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves,* 530 U.S. at 148, 120 S.Ct. 2097; *Blow,* 236 F.3d at 298; *Russell,* 235 F.3d at 223.

"Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Yet, such a showing by the plaintiff will not always be adequate to sustain a finding of liability. *See id.* "[A] showing of pretext does not automatically entitle an employee to a judgment as a matter of law." *Russell,* 235 F.3d at 223 (citing *Hicks,* 509 U.S. at 524, 113 S.Ct. 2742). Indeed, "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.'" *Reeves,* 530 U.S. at 146, 120 S.Ct. 2097 (quoting *Hicks,* 509 U.S. at 524, 113 S.Ct. 2742). "In other words, '[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" *Id.* (quoting *Hicks,* 509 U.S. at 519, 113 S.Ct. 2742). Fifth Circuit case law is clear: "discrimination suits still require evidence of discrimination." *Rubinstein v. Administrators of Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001). "[T]here may be instances, although rare,

where a showing of pretext would not be sufficient to infer discrimination." *Russell,* 235 F.3d at 223. "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097 (citing *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1291–92 (D.C.Cir.1998)); *see Russell,* 235 F.3d at 223.

Because the plaintiff has the ultimate burden of proving intentional discrimination, "[a]n employer is entitled to judgment as a matter of law on this ultimate question 'if the evidence taken as a whole would not allow a jury to infer that the actual reason for the [employer's decision] was discriminatory.'" *Vadie,* 218 F.3d at 372 (quoting *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996)). "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Crawford,* 234 F.3d at 902–03 (citing *Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 301 (5th Cir.), *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2000)). "It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Id.* at 903 (citing *Travis v. Board of Regents,* 122 F.3d 259, 263 (5th Cir.1997), *cert. denied,* 522 U.S. 1148, 118 S.Ct. 1166, 140 L.Ed.2d 176 (1998)). "The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination." *Id.* The burden-shifting approach may be dispensed with altogether,

however, if the plaintiff is able to demonstrate intentional discrimination by direct evidence of discriminatory motive. *See Wallace,* 80 F.3d at 1047–48; *Kendall v. Block,* 821 F.2d 1142, 1145 (5th Cir.1987); *Ramirez v. Sloss,* 615 F.2d 163, 168 (5th Cir.1980).

### C. *Prima Facie Case of Discrimination*

#### 1. *Prima Facie Case of Discriminatory Discharge in the Reduction–in–Force Context*

"The Supreme Court has stressed that the *McDonnell* test was not intended to be a rigid or ritualistic test of disparate treatment." *Carter v. City of Miami,* 870 F.2d 578, 583 n. 12 (11th Cir.1989) (citing *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478). Because discrimination exists " 'in forms as myriad as the creative perverseness of human beings can provide,' certain specific elements do not constitute 'the alpha and omega' " of a *prima facie* case. *Thornbrough,* 760 F.2d at 642 (quoting *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 753–54 (5th Cir.1980)); *see Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977). Therefore, the Fifth Circuit has modified the *McDonnell Douglas* test in the context of termination cases that involve a general reduction in the employer's workforce. *See Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 812 (5th Cir.1991); *Thornbrough,* 760 F.2d at 642; *Williams v. General Motors Corp.,* 656 F.2d 120, 127–28 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). RIF cases are outside the embrace of *McDonnell Douglas,* as reduction-case plaintiffs are simply laid off and thus are incapable of proving the fourth *McDonnell Douglas* prong, *i.e.,* actual replacement by someone outside the protected group. *See Thornbrough,* 760 F.2d at 642.

■ Therefore, in situations where the employer reduces its workforce and does not plan to replace the discharged employee, "the fourth element is 'that after [the] discharge, others who were not members of the protected class remained in similar positions.' " *Bauer,* 169 F.3d at 966 (quoting *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir.1990)); *accord Meinecke,* 66 F.3d at 83. In other instances, the Fifth Circuit has found the fourth prong of the *prima facie* case to be altered to require the plaintiff to produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams,* 656 F.2d at 129; *see Nichols,* 81 F.3d at 41; *Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 118 (5th Cir.1993); *Amburgey,* 936 F.2d at 812; *Thornbrough,* 760 F.2d at 642.

Hence, in order to establish a *prima facie* case of discrimination in a RIF case, a plaintiff may show:

(1) she is a member of a protected class;

(2) she was adversely affected by the employer's decision;

(3) she was qualified to assume another position; and

(4) others who were not members of the protected class remained in similar positions.

*See Bauer,* 169 F.3d at 966; *Meinecke,* 66 F.3d at 83; *Vaughn,* 918 F.2d at 521. Alternatively, the plaintiff can demonstrate:

(1) she is a member of a protected group;

(2) she was adversely affected by the employer's decision;

(3) she was qualified to assume another position; and

(4) evidence, either circumstantial or direct, from which a factfinder might

reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *See Woodhouse,* 92 F.3d at 252; *Nichols,* 81 F.3d at 41; *Amburgey,* 936 F.2d at 812.

■ It is undisputed that Eugene is a member of at least two protected classes, as she is black and was over forty years of age at the time of the RIF. It is also established that Eugene lost her position due to a RIF. Hence, Eugene has satisfied the first two elements of a *prima facie* case of discrimination.

As to the third element, one of two unrebutted, sworn declarations of Nancy E. Ward ("Ward"), Staff Director of Civilian Personnel of the DLA, establishes that, on May 11, 1998, when Eugene and the other affected employees received their RIF letters, there were no remaining positions available for employees at their grade levels. Thus, at that time, no positions existed at the DLA for which Eugene was qualified. On June 3, 1998, prior to her separation from federal employment, the DLA posted two job openings for Inventory Traffic Management Specialists, GS–301–5/7, at the DFO in Houston, for which Ward concedes Eugene was qualified. Eugene argues that she should have been promoted and/or rehired to fill one of these positions or a similar position posted on September 8, 1999. Because she did not raise these issues in her formal complaint of discrimination, however, they remain unexhausted and may not now be used as the basis for a Title VII or ADEA claim. *See Randel v. United States Dep't of Navy,* 157 F.3d 392, 395 (5th Cir.1998); *Robinson v. Rubin,* 77 F.Supp.2d 784, 792 (S.D.Tex.1999).

Eugene, likewise, cannot establish the fourth element of a *prima facie* case. The record reflects that none of the employees similarly situated to Eugene remained employed at the DLA, as all similar positions were eliminated. Moreover, none of the affected employees was rehired by the DFO in Houston until more than three years later, when Dover returned in June 2001 after working in the interim for the Veteran's Administration. Furthermore, a review of the record reveals that Eugene has offered no competent summary judgment evidence suggesting that the DLA intended to discriminate against her due to her protected status. She references no remarks made to or about her based on her race, national origin, or age. Indeed, at deposition, she could not recall a concrete example of discriminatory practices at the DLA based on race, national origin, or age. While Eugene's deposition testimony is replete with catchwords such as "discrimination," "humiliation," "reprisal," "harassment," and "retaliation," she was unable to articulate any specific instances in support of her assertions, much less to demonstrate that her race, national origin, or age played any role in the elimination of her job as part of the RIF.

In her affidavit, Nolan states that at the end of an all-employee staff meeting, an employee named Bill Moon called white employees by name but referred to minority employees as "you." To the extent this can be considered a reference to race, it is no more than a " 'stray remark[ ]' which [is] too remote and vague to be probative of age [or race] discrimination." *Armendariz,* 58 F.3d at 153. While Eugene presents the purported "affidavit" of Woodard, who states her belief that black employees were treated differently than white employees, the "affidavit" is neither signed, sworn to under penalty of perjury, nor notarized, and is, therefore, not competent evidence. Dover, in her affidavit, mentions only that employees at lower grade levels were treated "differently." Similarly, in her affidavit, Schubert states merely that the DFO had "different rules for dif-

ferent people" without any explanation. Hence, Eugene has not adduced direct or circumstantial evidence from which the factfinder could reasonably conclude that the DLA intended to discriminate against her based on her protected class in reaching the decision at issue. *See Williams,* 656 F.2d at 129. Thus, Eugene has not established the third or fourth elements of a *prima facie* case of discrimination in the context of a RIF, and summary judgment is warranted on this claim.

### 2. *Prima Facie Case of Disparate Treatment*

■ Eugene also alleges disparate treatment while employed by the DLA. To establish a *prima facie* case of disparate treatment, the plaintiff must show that:

(1) she is a member of a protected class;

(2) she was qualified for the position;

(3) she suffered an adverse employment action; and

(4) others outside the class who were similarly situated were treated more favorably than she.

*See Okoye,* 245 F.3d at 512–13; *Rutherford v. Harris County,* 197 F.3d 173, 183 (5th Cir.1999); *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.), *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998); *Nieto v. L & H Packing Co.,* 108 F.3d 621, 623 n. 5 (5th Cir. 1997); *Waggoner v. City of Garland,* 987 F.2d 1160, 1163–64 (5th Cir.1993); *Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988); *Thornbrough,* 760 F.2d at 639. She must demonstrate that employees outside her protected class received preferential treatment in circumstances nearly identical to hers. *See Okoye,* 245 F.3d at 514; *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091–92 (5th Cir.1995); *Little,* 924 F.2d at 97.

Again, Eugene is undisputably a member of at least two protected classes. Furthermore, Rumsfeld does not dispute that she was qualified for the position she held. Aside from her termination, however, for which she has failed to establish a *prima facie* case of discrimination as discussed above, the majority of Eugene's complaints do not constitute actionable adverse employment actions.

■ In the context of federal government employees, the "adverse employment action" component of a plaintiff's *prima facie* case requires a showing that the employee was subject to a "personnel action." Title VII provides that "[a]ll personnel actions affecting [government] employees . . . shall be made free from discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). Thus, a government employee seeking to assert a claim of discrimination under Title VII must first identify an act of discrimination with respect to a "personnel action" affecting the employee. *See Dollis,* 77 F.3d at 781–82; *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981). In situations where, as here, the plaintiff does not allege severe and pervasive harassment, actionable adverse employment actions are generally limited to "tangible employment action[s] [that] constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see Watts v. Kroger Co.,* 170 F.3d 505, 510 (5th Cir.1999); *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996); *Yates v. Avco Corp.* 819 F.2d 630, 638 (6th Cir.1987).

It is generally recognized that the employment discrimination statutes were designed to address ultimate employment decisions, not to scrutinize every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. *See Dollis,* 77 F.3d at 781–82; *Page,* 645 F.2d at 233. Ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave. *See Burger v. Central Apartment Mgmt., Inc.,* 168 F.3d 875, 879–80 (5th Cir.1999); *Dollis,* 77 F.3d at 782; *Page,* 645 F.2d at 233; *see also Ellis v. Director, CIA,* 1999 WL 704692, at *3, 191 F.3d 447 (4th Cir. Sept. 10, 1999). "'Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.'" *Burger,* 168 F.3d at 879 (quoting *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996)). An ultimate employment decision, in itself or through its direct consequences, must effect a material change in the terms or conditions of employment. *See Ledergerber v.. Stangler,* 122 F.3d 1142, 1144 (8th Cir.1997); *see also Ellis,* 1999 WL 704692, at *3, 191 F.3d 447. "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Watts,* 170 F.3d at 512.

"'Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action.'" *Greaser v. Missouri Dep't of Corrections,* 145 F.3d 979, 984 (8th Cir.1998) (quoting *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997)); *accord Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir.1997); *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996). Interlocutory or mediate decisions, even those that can lead to an ultimate employment decision, are not adverse employment actions for purposes of Title VII. *See Burger,* 168 F.3d at 880; *Page,* 645 F.2d at 233; *see also Ellis,* 1999 WL 704692, at *3, 191 F.3d 447. As the Seventh Circuit has explained:

> "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.... A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

*Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1112 n. 7 (7th Cir.1998) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)); *accord Rabinovitz v. Pena,* 89 F.3d 482, 488 (7th Cir.1996).

■ In her complaint, Eugene references a number of events that do not rise to the level of ultimate employment decisions. She maintains that she was harassed, intimidated, and retaliated against by her supervisor, Guillochon, who reported erroneous information regarding her performance to his superiors and gave her a performance evaluation of "minimally acceptable," which was upgraded after she successfully pursued a grievance. "[N]egative performance evaluations, standing alone, cannot constitute an adverse employment action." *Sweeney v. West,* 149 F.3d 550, 556 (7th Cir.1998) (citing *Smart,* 89 F.3d at 442). She also contends that she was denied proper support and techni-

cal information, was required to perform "undesirable" tasks, was subject to false accusations, had her personal needs ridiculed, was at times given either insignificant duties not commensurate with her grade level or an overabundance of work, was criticized, and had her complaints ignored. None of these alleged actions, while unfortunate, rises to the level of an ultimate employment action. It is well established that "[u]ndesirable work assignments are not adverse employment actions." *Southard v. Texas Bd. of Crim. Justice,* 114 F.3d 539, 555 (5th Cir.1997). In addition, "Plaintiff[ ] point[s] to no case law (nor did [the court] find any) which holds that an employer's criticism of an employee, without more, constitutes an actionable adverse employment action." *Harrington v. Harris,* 118 F.3d 359, 366 (5th Cir.), *cert. denied,* 522 U.S. 1016, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997). Eugene further asserts that, although she subsequently received unemployment compensation, she "had her unemployment compensation illegally contested." She offers no evidence or explanation in support of this claim.

■ In her complaint, Eugene refers to being denied a promotion in October 1997 as well as in October 1999. The evidence presented with her summary judgment motion, however, reveals that she is actually complaining of not being promoted and/or rehired for a DLA position in October 1998 and again in October 1999. She provides no evidence of the failure to receive a promotion prior to her departure from federal employment. Because these events occurred after her termination, they are not properly the subject of a disparate treatment claim alleging a failure to promote. In any event, as discussed above, Eugene has not exhausted her administrative remedies with regard to her failure to promote and/or rehire

claims, as she did not raise these issues in her formal complaint of discrimination. Indeed, her complaint was filed in June 1998, prior to the occurrence of these events, and there is no indication that she subsequently amended her complaint or filed another one raising these issues. Notably, in a letter dated December 23, 1998, the DLA informed her that it was necessary to file a new complaint regarding events that occurred after she filed her formal complaint of discrimination. It is apparent that she did not heed this advice.

■ "As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust [her] administrative remedies." *Randel,* 157 F.3d at 395 (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him")); *accord Fitzgerald v. Secretary, U.S. Dep't of Veterans Affairs,* 121 F.3d 203, 206 (5th Cir.1997); *Francis v. Brown,* 58 F.3d 191, 192 (5th Cir.1995); *Pacheco v. Rice,* 966 F.2d 904, 905 (5th Cir.1992). The same rule applies to cases brought under the ADEA. *See Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir.2001). The filing of an administrative complaint is a jurisdictional prerequisite to a Title VII or ADEA action brought by a federal employee. *See Fitzgerald,* 121 F.3d at 206; *Barnes v. Levitt,* 118 F.3d 404, 408 (5th Cir.1997), *cert. denied,* 523 U.S. 1136, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998) (citing *Dollis,* 77 F.3d at 781); *Tolbert,* 916 F.2d at 247; *Porter v. Adams,* 639 F.2d 273, 276 (5th Cir.1981).

■ "The purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Barnes,* 118 F.3d at 409; *accord Munoz v. Aldridge,* 894 F.2d 1489, 1493 (5th Cir.

1990). " 'A Title VII cause of action "may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." ' " *Robinson,* 77 F.Supp.2d at 792 (quoting *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 451 (5th Cir.), cert. denied, 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983))). " '[A] rule of reason . . . permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge.' " *Id.* (quoting *Fine,* 995 F.2d at 578).

Here, Eugene did not raise her allegations regarding failure to promote and/or rehire in a formal complaint of discrimination. These assertions grow out of facts separate from those constituting the basis of Eugene's exhausted claims, and, thus, would not have fallen within the scope of a reasonable investigation into her previously asserted claims. *See Randel,* 157 F.3d at 395; *Robinson,* 77 F.Supp.2d at 792. Therefore, under controlling authority, this court is without jurisdiction to consider these claims. *See Randel,* 157 F.3d at 395; *Fitzgerald,* 121 F.3d at 206; *Barnes,* 118 F.3d at 408. Thus, Eugene's failure to promote and/or rehire claims must be dismissed for lack of exhaustion.

Eugene further asserts that she was "denied awards in error as in the 1997 one thousand dollar ($1000.00) incentive." She fails, however, to advance any evidence relating to this claim. In her deposition testimony, which is presented by Rumsfeld and is not referred to in Plaintiff's briefing, Eugene stated that she received a $500.00 award in 1997 rather than the $1,000.00 award allegedly promised, but she conceded that she did not know whether any of the other GS–6 level employees at the DFO in Houston received $1,000.00 that year. Hence, she has failed to show that similarly situated persons outside her protected class received the $1,000.00 award while she did not.

Finally, Eugene states that she was "illegally denied Voluntary Early Retirement (VERA) and Voluntary Separation and Incentive Pay (VSIP) of twenty-five thousand dollars ($25,000.00), notice of which she received on March 9, 1998, due to the initial erroneous performance review." She has adduced no evidence, however, that her minimally acceptable performance review prevented her from obtaining either VERA or VSIP benefits. At deposition, Eugene stated her subjective belief that her poor performance review affected her VERA/VSIP eligibility, but she did not explain how she came to formulate that belief. Indeed, the evidence indicates to the contrary—Eugene was eligible to receive VERA/VSIP when offered in March 1998 without regard to the results of her performance review. As Ward states in her sworn declaration:

> Offers of VERA/VSIP are not tied to an employee's performance rating or otherwise related to an employee's performance. This was true of the offer extended to Ms. Eugene, as well as to all others at DFO–Houston.

Eugene, however, did not opt to participate in VERA/VSIP when it was offered.

Eugene further contends that, after her performance rating was changed to fully successful, the date for VERA/VSIP acceptance was extended or another offer was made. In the RIF notice, Eugene was not offered VERA or VSIP, but she was informed:

Since you are eligible for discontinued service retirement, you are not entitled to severance pay.... Your last day of active duty in your position will be July 13, 1998. You may request a 30 day extension from this scheduled date of separation. However, since there is no work available, the requested extension would be approved in the form of annual leave or leave without pay. Any unused annual leave to your credit will be paid in a lump sum.

In her affidavit, Ward elaborates:

There were no further VERA/VSIP opportunity periods after the March 3–20, 1998 offer. The offer of VERA/VSIP is one of the first steps required before a RIF. Once the VERA/VSIP offer was completed, employees who wished to register early (in advance of the RIF) were registered in the priority placement program (PPP) beginning April 1998. RIF notices were issued on May 11, 1998. Only one VERA/VSIP offer is required prior to conduct of a RIF and, once RIF notices are issued, VERA/VSIP may not be offered again.

Additionally, an e-mail sent on June 18, 1998, by Thomas J. Korczynski ("Korczynski"), Deputy Director of the DESC, to Charles Anderson, the president of the bargaining unit at the DFO in Houston during the 1998 RIF, reads:

In researching the VSIP Program in anticipation of a second offering, we learned that personnel who have received RIF notices are not eligible for VSIP. Much to our disappointment, this will preclude us from offering VSIP a second time to those DEO–HU employees whose positions were abolished and who have received their RIF notice.

This letter demonstrates not only that employees with RIF notices were ineligible for another VSIP offering but also indicates that a second offering never occurred.

Nevertheless, Eugene submits a memorandum from Pamela M. Creek, Executive Director of Human Resources at DLA Headquarters, dated June 26, 1998, addressed to the DLA Executive Management Team, DLA Civilian Personnel Officers, and Director, Human Resources Operations Center, explaining that the DOD had received authority to approve VERA in conjunction with VSIP for qualified employees through September 30, 1999. It was apparently Eugene's belief that this memorandum permitted her to seek VERA/VSIP after the original offering period closed. Eugene also attached to her summary judgment motion an undated e-mail from her to Anne Ross ("Ross"), an unidentified agency employee, stating:

Per our conversation, on Friday 10 July 1998. Reference my VERA request. You stated that you forward [sic] my request to Ms. Mathews and CPT McKenzie/Houston. You indicated that you have nothing to do with VERA/VSIP.

Per our conversation you stated that I was qualified for the 301 position that I had applied for.

Per our conversation that the new 30 day Extension date is 12 August 1998.

It is unclear whether this e-mail suggests, as Eugene maintains, that Ross's reference to the thirty-day extension pertained to VERA/VSIP eligibility rather than the thirty-day extension of Eugene's employment from the July 13, 1998, effective date of the RIF.

In any event, it is apparent that Ross had "nothing to do with VERA/VSIP" and referred Eugene's concerns to Patricia Mathews ("Mathews"), another unidentified employee, and McKenzie. In an e-

mail dated July 14, 1998, Mathews sent Eugene the following message:

> Hi Clara
>
> the letter dated June 26, 1998 is just a letter addressed to the DLA executive Management Team, DLA Civilian Personnel Officers, and Director, Human Resources Operations Center, stating that VERA authority is good through 1999. It is not an offer for an employee for VERA. It also is not a letter addressed to employees, but to management. I'm sorry, but you are not being offered VERA. thanks, Pat Mathews

Thus, Eugene's contention that she was wrongfully denied participation in a VERA or VSIP plan is without factual basis. Under these circumstances, Eugene cannot succeed on her claim of disparate treatment, as she has not shown that employees outside her protected class were treated more favorably than she. Therefore, summary judgment is appropriate on her disparate treatment claim.

### D. *Legitimate, Nondiscriminatory Reason*

Even if Eugene had established a *prima facie* case of discrimination, however, the DLA has set forth an adequate, nondiscriminatory reason for its actions. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Hicks*, 509 U.S. at 506–07, 113 S.Ct. 2742; *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.1998); *Messer*, 130 F.3d at 137; *Faruki*, 123 F.3d at 320; *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 370 (5th Cir.1997). The purpose of this step is " 'to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of prov-

ing discriminatory intent.' " *Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir.1997) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1336 (2d Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)). "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998); *accord Williams*, 98 F.3d at 181; *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir.1993); *Fields v. Clark Univ.*, 966 F.2d 49, 51 (1st Cir.1992), *cert. denied*, 506 U.S. 1052, 113 S.Ct. 976, 122 L.Ed.2d 130 (1993). Hence, the defendant's burden is relatively light. *See Greenway*, 143 F.3d at 52.

■ "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995) (quoting *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742); *see EEOC v. Texas Bus Lines*, 923 F.Supp. 965, 970 (S.D.Tex.1996). "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n. 6 (1st Cir.1979); *see Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984). Indeed, even an employer's incorrect belief that "an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason." *Mayberry*, 55 F.3d at 1091 (citing *Little*, 924 F.2d at 97). The articulated reason, however, must be both "clear and reasonably specific." *Okoye*, 245 F.3d at 513 (quoting *Burdine*, 450 U.S. at 258, 101 S.Ct. 1089); *see Gallo v. Prudential Resi-*

*dential Servs. Ltd. P'ship,* 22 F.3d 1219, 1226 (2d Cir.1994). Furthermore, it "'must be legally sufficient to justify a judgment for the [employer].'" *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 161 (1st Cir.1998) (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089); *see Nichols,* 81 F.3d at 41. If the defendant sustains its burden of production, "the presumption raised by the plaintiff's prima facie case essentially disappears, and the plaintiff is left with the ultimate burden which has never left [her]: that of proving that the defendant intentionally discriminated against [her]." *Tanik v. Southern Methodist Univ.,* 116 F.3d 775, 776 (5th Cir.), *cert. denied,* 522 U.S. 1015, 118 S.Ct. 600, 139 L.Ed.2d 488 (1997); *accord Reeves,* 530 U.S. at 148, 120 S.Ct. 2097; *Evans,* 246 F.3d at 350; *Bauer,* 169 F.3d at 966; *Messer,* 130 F.3d at 137; *Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).

■ Here, Rumsfeld has set forth a legitimate, non-discriminatory reason for the DFO's actions. The sworn declarations of Korczynski, Ward, and Bowman, as well as the February 12, 1998, letter from the DFO in Houston requesting agency approval to conduct the RIF, establish that the DFO in Houston underwent an agency-approved RIF, eliminating the seven lowest-grade positions in the office, including Eugene's. The Fifth Circuit has recognized that a RIF or consolidation "is itself a legitimate, nondiscriminatory reason for discharge." *EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996); *see Nichols,* 81 F.3d at 41; *Armendariz,* 58 F.3d at 150. Additionally, Rumsfeld has shown that Eugene did not receive VERA/VSIP because she failed to take advantage of the March 1998 offer, although, contrary to her assertions, she was fully qualified for those benefits at the time of the offer. As discussed above,

Eugene complains of three other adverse employment actions, but she offers no evidence pertaining to her claim regarding the $500.00 award and did not exhaust her administrative remedies with respect to her failure to promote and/or rehire claims, rendering it unnecessary for Rumsfeld to articulate a reason for those actions. In this instance, Rumsfeld has set forth specific reasons for the elimination of Eugene's position and her failure to receive VERA/VSIP, which permit the conclusion that such actions were not based on a discriminatory animus, thus satisfying Rumsfeld's burden of production.

### E. Pretext for Discrimination

Because Rumsfeld has carried his burden of articulating a legitimate, nondiscriminatory reason for the DLA's actions, to prevail, Eugene "'must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination.'" *Rutherford,* 197 F.3d at 184 (quoting *Scott v. University of Miss.,* 148 F.3d 493, 504 (5th Cir.1998)); *see Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742; *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Travis,* 122 F.3d at 263; *Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir.1997). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason" for the employer's decision. *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742. The plaintiff must be given a "'full and fair opportunity to demonstrate,' through presentation of [her] own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' and that [race, national origin, or age] was." *Id.* at 507–08, 113 S.Ct.

2742 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom'" may still be considered "'on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

Nevertheless, as pointed out above, "discrimination suits still require evidence of discrimination." *Rubinstein*, 218 F.3d at 400. If, however, "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford*, 234 F.3d at 903 (citing *Walton*, 119 F.3d at 372); *see Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. "The question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff[ ] on the basis of [race, national origin, or age]." *Pratt*, 247 F.3d at 606 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742). Hence, the plaintiff's assertion of pretext must be substantiated by more than self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext. *See Nichols*, 81 F.3d at 42; *Molnar*, 986 F.2d at 119. If the evidence presented is "not so persuasive so as to support an inference that the real reason was discrimination," then the plaintiff has failed to meet her burden. *Rubinstein*, 218 F.3d at 400. "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was

discriminatory." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

■ Here, Eugene has presented no evidence indicating that Rumsfeld's actions were pretextual. As discussed above, neither her affidavit nor the affidavits of coworkers attached to her summary judgment motion contain competent evidence suggesting that the DLA's true motivation for the RIF was discriminatory. The evidence establishes that all the employees in the lowest-grade positions were laid off, irrespective of their race, national origin, or age.

The affidavits of Nolan and Woodard, in addition to Eugene's affidavit submitted as part of the EEO investigation, indicate that Eugene was at times assigned additional duties exceeding those required for her grade level, that she was given more work than some other employees, and that she was subjected to allegedly unwarranted criticism. Eugene has also presented evidence, as discussed above, regarding her erroneous belief that she was eligible for a second offering of VERA/VSIP. Eugene further contends that Guillochon's giving her a minimally acceptable performance review on the same day he delivered the letter regarding VERA/VSIP was an attempt to force her to resign or retire against her will. She states that Guillochon attributed her marginal performance appraisal to complaints he had received regarding her performance about which she contends she was never informed or counseled. She further maintains that during much of the reorganization discussions, the employees were not informed that positions might be abolished. None of these assertions, however, establishes pretext or suggests that discriminatory animus motivated or played a role in the RIF.

Rather, the elimination of Eugene's position, as well as those of her coworkers,

undertaken as part of the DLA's efforts to reorganize, were legitimate business decisions, which the court will not disturb. *See Walton,* 119 F.3d at 372; *Guthrie v. Tifco Indus.,* 941 F.2d 374, 378 (5th Cir. 1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). The employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions nor ... to transform the courts into personnel managers." *Louisiana Office of Community Servs.,* 47 F.3d at 1448 (citing *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988)); *see Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Walton,* 119 F.3d at 372; *Bodenheimer,* 5 F.3d at 959; *Waggoner,* 987 F.2d at 1165. "Federal Courts 'do not sit as a super-personnel department that reexamines an entity's business decisions ...'" *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)).

It has long been the law in the Fifth Circuit that Title VII does not protect against unfair or unwise business decisions, only against decisions motivated by unlawful animus. *See Nieto,* 108 F.3d at 624. "Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix,* 738 F.2d at 1187 (citing *Megill v. Board of Regents,* 541 F.2d 1073, 1077 (5th Cir.1976)). " 'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination.' " *Id.* (quoting *Loeb,* 600 F.2d at 1012 n. 6). As the Fifth Circuit explained in *Mayberry:*

"[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue .... [A] dispute in the evidence concerning job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence."

55 F.3d at 1091 (quoting *Little,* 924 F.2d at 97); *see Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989); *Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1316 n. 11 (5th Cir.1986). A showing of pretext "must extend beyond casting doubt on the reasonableness of the employer's action; otherwise, the law would be converted to a 'just cause' provision for the protected class of employees, an effect that Congress clearly did not intend." *Hanchey v. Energas Co.,* 925 F.2d 96, 98 (5th Cir.1990) (citing *Bienkowski,* 851 F.2d at 1508 n. 6).

A review of Eugene's affidavit and deposition testimony reveals that she does not articulate any specific examples of remarks or references by her superiors indicating race, national origin, or age-based animus. While she has presented evidence that she may have been given inequitable work assignments, "[h]urt feelings, anger and frustration are part of life." *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 940 (5th Cir.1996), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997). " '[N]ot every insult, slight, or unpleasantness gives rise to a valid Title VII claim.' " *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.,* 139 F.3d 532, 539 (5th Cir.1998) (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1297 (3d Cir. 1997)). " 'Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to

conclusions too fast.'" *Id.* (quoting *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir.1987) (quoting *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987))).

In the final analysis, Eugene's subjective perception of discrimination is all that remains. It is well established, however, that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief. *See, e.g., Price,* 119 F.3d at 337; *Nichols,* 81 F.3d at 42; *Douglass,* 79 F.3d at 1430; *Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 434 (5th Cir.1995); *Armendariz,* 58 F.3d at 153; *Louisiana Office of Community Servs.,* 47 F.3d at 1448; *Portis v. First Nat'l Bank of New Albany,* 34 F.3d 325, 329 (5th Cir.1994); *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 268 (5th Cir.1994). An employee's "bald assertions of [race, national origin, or age] discrimination are inadequate to permit a finding that proscribed discrimination motivated" an employer's conduct. *Ray,* 63 F.3d at 435. Moreover, the subjective belief of a fellow employee, whether a supervisor or coworker, suffers from the same defects as the plaintiff's subjective belief. *See Little,* 924 F.2d at 96; *McConnell v. Thomson Newspapers, Inc.,* 802 F.Supp. 1484, 1504 n. 26 (E.D.Tex.1992). It does not matter "that the belief belongs to a party other than the plaintiff," even if the belief is held by a supervisor. *See Little,* 924 F.2d at 96. When, as here, the plaintiff does not adduce objective evidence refuting the rational reasons articulated by the employer, pretext cannot be established by subjective beliefs that discrimination motivated the employer's actions. *See Armendariz,* 58 F.3d at 153; *Elliott v. Group Med. & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

Therefore, under the totality of the circumstances, Eugene has failed to demonstrate that Rumsfeld's articulated reasons for the RIF and Eugene's denial of VERA/VSIP are false, much less that they are a pretext for race, national origin, or age discrimination. *See Crawford,* 234 F.3d at 904. "'Evidence' that does not imply pretext taken alone does not do so when cumulated." *Texas Instruments, Inc.,* 100 F.3d at 1186–87 (citing *Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1391 (7th Cir.1990)). In this case, Eugene has not rebutted Rumsfeld's compelling evidence of legitimate, non-discriminatory reasons for the RIF and her failure to receive the $25,000.00 separation payment. Thus, Eugene, like the plaintiffs in *Crawford* and *Rubinstein,* has "failed to meet [her] burden of producing any evidence of discrimination sufficient to survive summary judgment, and [her] evidence to rebut the non-discriminatory reasons offered by [defendant] is not so persuasive so as to support an inference that the real reason was discrimination." *Rubinstein,* 218 F.3d at 400; *see Crawford,* 234 F.3d at 904. As a consequence, Eugene cannot prevail on her claims of discriminatory discharge and disparate treatment under Title VII or the ADEA, rendering summary judgment for Rumsfeld proper.

## F. *Retaliation*

■ Finally, in her complaint, Eugene asserts that she "was retaliated against for filing a formal complaint of discrimination." Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3. Similarly, the ADEA provides:

It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Retaliation claims under the ADEA are analyzed under the same standards that are applied to Title VII retaliation claims. *See Sherrod*, 132 F.3d at 1121; *Faruki*, 123 F.3d at 318; *Meinecke*, 66 F.3d at 83; *Grizzle*, 14 F.3d at 267; *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir.1992).

The anti-retaliation provisions have two components—an opposition clause and a participation clause. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir.1997); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1135 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982). "The opposition clause of § 2000e–3(a) requires the employee to demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *Payne*, 654 F.2d at 1140); *see De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 853 n. 2 (5th Cir.1982). The participation clause, however, does not include the "reasonable belief" requirement and provides broad protection to an employee who has participated in a Title VII proceeding. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir.1989);

*see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997), *cert. denied*, 523 U.S. 1122, 118 S.Ct. 1803, 140 L.Ed.2d 943 (1998). Under both clauses, the employee must demonstrate that her opposition to perceived unlawful activity was a motivating or determining factor in the adverse employment action taken by her employer, *i.e.*, there must be a causal connection. *See Evans*, 246 F.3d at 353; *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684–85 (5th Cir.2001); *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir.1984); *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983).

The Fifth Circuit has held that "the burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas Corp* .... is also applicable to Title VII unlawful retaliation cases." *Long*, 88 F.3d at 304 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04, 93 S.Ct. 1817; *McMillan*, 710 F.2d at 1116); *see Medina*, 238 F.3d at 684. "The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context." *Rios*, 252 F.3d at 380; *accord Medina*, 238 F.3d at 684; *Sherrod*, 132 F.3d at 1122. Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *See Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684; *Long*, 88 F.3d at 304–05; *Shirley*, 970 F.2d at 42 (citing *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1326 (5th Cir.1991)). If the employer meets its burden, the employee then bears the ultimate burden of showing that the reasons given by the employer are a pretext for retaliation. *See Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684; *Sherrod*, 132 F.3d at 1122; *Shirley*, 970 F.2d at 42. If the defendant introduces evidence which, if true, would permit the conclusion that the

adverse employment action was nonretaliatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. *Sherrod,* 132 F.3d at 1122; *Long,* 88 F.3d at 305. To carry her ultimate burden, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *See Rios,* 252 F.3d at 380; *Evans,* 246 F.3d at 354; *Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 972 (5th Cir.1999); *Sherrod,* 132 F.3d at 1122; *Walton,* 119 F.3d at 370; *Long,* 88 F.3d at 305 n. 4.

■ To establish a *prima facie* case of retaliation, a plaintiff must show:

(1) she participated in statutorily protected activity as described in Title VII or the ADEA;

(2) an adverse employment action occurred; and

(3) a causal connection exists between the protected activity and the adverse action.

*See Mota v. University of Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 519 (5th Cir.2001); *accord Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254, 259 (5th Cir.2001); *Cain v. Blackwell,* 246 F.3d 758, 760 (5th Cir.2001); *Evans,* 246 F.3d at 352; *Medina,* 238 F.3d at 684; *Walker v. Thompson,* 214 F.3d 615, 628–29 (5th Cir. 2000); *Scrivner,* 169 F.3d at 972; *Burger,* 168 F.3d at 878. "An employee has engaged in activity protected by Title VII [or the ADEA] if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII [or the ADEA] or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII [or the ADEA]." *Grimes,* 102 F.3d at 140 (citing 42 U.S.C. § 2000e–3(a); *Long,* 88 F.3d at 304).

Here, Eugene indisputably engaged in protected activity when she filed a grievance and lodged an informal and then a formal complaint with the DLA about perceived discriminatory employment practices, thus establishing the first element of a *prima face* case of retaliation. " '[F]iling an administrative complaint is clearly protected activity.' " *Walker,* 214 F.3d at 629 (quoting *Dollis,* 77 F.3d at 781). Her termination and the failure of the DLA to promote and/or rehire her to fill subsequently-posted job openings constitute adverse employment actions that satisfy the second element of a *prima facie* case of retaliation. The other adverse employment action about which Eugene has submitted evidence, namely, her failure to receive VERA/VSIP, is not actionable. As detailed above, Eugene declined the offer for VERA/VSIP when it was extended, and she could no longer participate in these programs once the RIF notice was sent.

■ Although causation is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case stage is much less stringent. *See Evans,* 246 F.3d at 354; *Medina,* 238 F.3d at 685; *Long,* 88 F.3d at 304 n. 4; *Ray,* 63 F.3d at 435; *McMillan,* 710 F.2d at 1116–17; *Payne,* 654 F.2d at 1141 n. 13. As the Fifth Circuit has commented:

At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly.

*Long,* 88 F.3d at 305 n. 4 (emphasis in original). A plaintiff need not prove that her protected activity was the sole factor in motivating the employer's challenged decision in order to establish the requisite causal link. *See Evans,* 246 F.3d at 354; *Medina,* 238 F.3d at 684; *Long,* 88 F.3d at 305 n. 4; *De Anda,* 671 F.2d at 857 n. 12. Rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity. *See Medina,* 238 F.3d at 684; *Sherrod,* 132 F.3d at 1122. In *Medina,* the Fifth Circuit adopted the Eleventh Circuit's method of analysis in a similar case, finding that "the 'causal link' element is satisfied when the plaintiff shows that the employment decision and [her] protected activity 'were not wholly unrelated.'" 238 F.3d at 684 (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985)).

■ The consideration of three factors may be helpful in determining whether a causal link has been demonstrated at the *prima facie* case stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act. *See Nowlin v. RTC,* 33 F.3d 498, 507–08 (5th Cir.1994) (citing *Jenkins v. Orkin Exterminating Co.,* 646 F.Supp. 1274, 1277 (E.D.Tex. 1986)). "The timing of the adverse employment action can be a significant, although not necessarily determinative, factor." *Mayberry,* 55 F.3d at 1092; *accord Evans,* 246 F.3d at 354. " 'Close timing between an employee's protected activity and an adverse action against [her] may provide the "causal connection" required to make out a prima facie case of retalia-

tion.'" *Id.* (quoting *Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.), *cert. denied,* 522 U.S. 948, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997)); *accord Chavez v. City of Arvada,* 88 F.3d 861, 866 (10th Cir.1996), *cert. denied,* 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997) (citing *Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982)).

In the case at bar, the record reflects that the decision to implement the RIF was made prior to Eugene's filing her grievance and well before she lodged her informal and formal complaints of discrimination. Indeed, at deposition, Eugene stated that she became aware in February 1998 that her position would be abolished pursuant to a RIF. Thus, there can be no causal link between her termination and her participation in protected activity.

■ Eugene also contends, however, that she applied for job openings posted in June 1998 and September 1999 but was not promoted and/or rehired for these positions. In this instance, the temporal relationship between the DLA's failure to hire her for the 1999 position and her complaints about discrimination are too attenuated to infer a causal link. *See Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir.1999) (fifteen-month period that elapsed between protected activity and adverse employment action precluded an inference of causation); *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998) (thirteen-month delay between protected activity and termination too long for causation to be established); *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1370 (7th Cir.1993) (nine-month gap between protected activity and adverse employment action precluded reasonable inference of causation). Eugene filed her formal com-

plaint of discrimination in July 1998, approximately thirteen months before the DLA chose not to hire her for the 1999 job opening. Moreover, in her declaration, Ward explains that Eugene was simply ineligible for the position, as it was open only to current employees of federal agencies, candidates with a bachelor's degree, and displaced employees of other federal agencies who had been separated from a position with promotion potential to the GS–11 level. Eugene does not fit into any of these categories. Thus, Eugene has not demonstrated a causal link between her protected activity and the DLA's failure to rehire her in 1999.

On the other hand, the timing of the DLA's failure to promote and/or rehire her for the positions posted in June 1998, with the hiring decisions made in October 1998, is sufficiently questionable to raise a fact issue as to the third element of a *prima facie* case of retaliation under Title VII and the ADEA. In a recent case, the Fifth Circuit "note[d] that 'a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.' " *Evans*, 246 F.3d at 354 (quoting *Weeks v. Nations-Bank, N.A.*, No. CIV.A.3:98–CV–1352M, 2000 WL 341257, at *3 (N.D.Tex. Mar. 30, 2000)). Moreover, in *Medina*, the Fifth Circuit found that the terminating supervisor's awareness of the plaintiff's discrimination complaint two months prior to his discharge was sufficient to demonstrate a causal link. *See* 238 F.3d at 684.

Nevertheless, Rumsfeld has adduced ample evidence of a nonretaliatory reason for its failure to promote and/or rehire Eugene in October 1998. *See id.* (citing *Long*, 88 F.3d at 305); *Shirley*, 970 F.2d at 42. In her sworn declaration, McKenzie explains that Eugene was considered for the positions by a panel, which reviewed the applications and interviewed the candidates before narrowing the group to five persons, who were referred to McKenzie for consideration. Eugene was not among the recommended candidates. McKenzie explained that she considered Eugene despite the lack of recommendation, but that, after becoming acquainted with her in January 1997, she had observed:

> Ms. Eugene was not able to work independently, even at a level lower than the one called for by the advertised positions. She needed supervision on tasks that she should have been able to complete herself. At times I thought that she did not understand some of the basic concepts of her then current administrative position. Because of this I did not believe that she would be able to perform successfully at a more advanced and complex level where other team members would be relying on her to perform in an efficient and correct manner.

She adds, "Plaintiff was not selected for either of the positions due to her inability to work independently, her inability to work without supervision, and her inability to understand basic concepts. I did not discriminate in my decision to select two applicants other than plaintiff." Ultimately, McKenzie selected two candidates for the position from outside the DLA, a Hispanic male over forty years of age, who had substantial experience working with commodities and could work independently, and a white female, who had superior analytical skills. While Eugene may dispute McKenzie's assessment of her performance, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue." *Little*, 924 F.2d at 97; *see Mayberry*, 55 F.3d at 1091. Eugene has adduced no evidence suggesting that McKenzie acted in bad

faith when she selected other candidates for the positions or that the decision not to promote and/or rehire Eugene was motivated by anything other than a reasonable belief that she was not as well-suited as the other candidates for the positions in question.

The final inquiry, therefore, is whether the proffered reasons for the alleged acts of retaliation are merely pretextual. *See Rios*, 252 F.3d at 380; *Sherrod*, 132 F.3d at 1122. "If the plaintiff presents evidence supporting the prima facie case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of retaliation." *Mota*, 261 F.3d at 519 (citing *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097). Evidence that raises only a weak inference of pretext, however, is insufficient to create a genuine issue of material fact in the retaliation context. *See Rios*, 252 F.3d at 381. The ultimate burden of persuading the trier of fact that the defendant unlawfully retaliated against the plaintiff for engaging in protected activity remains at all times with the plaintiff. *See Sherrod*, 132 F.3d at 1122; *see also Rios*, 252 F.3d at 380.

 Unlike a disparate treatment case, which requires only that the prohibited factor be a substantial motive for the defendant's adverse action, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n. 4 (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985)); *see Rios*, 252 F.3d at 380; *Evans*, 246 F.3d at 354; *Medina*, 238 F.3d at 685; *Sherrod*, 132 F.3d at 1122; *Ray*, 63 F.3d at 435; *Shirley*, 970 F.2d at 43; *Jack*, 743 F.2d at 1131. Hence, the employee must show that the employer's explanation is unworthy of credence and that "but for" her protected activities she would not have

suffered the adverse employment action. *See Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 685; *Scrivner*, 169 F.3d at 972; *Ray*, 63 F.3d at 435–36. "While this portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina*, 238 F.3d at 685 (citing *McMillan*, 710 F.2d at 1116–17).

Under these circumstances, Eugene has failed to demonstrate that Rumsfeld's proffered rationale for failing to promote and/or rehire her is pretextual. She has made no showing that the articulated reasons are false. "Merely disputing [the employer's] assessment of [the plaintiff's] work performance will not necessarily support an inference of pretext." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir.1999); *accord Evans*, 246 F.3d at 355. While, at deposition, Eugene testified that during her employment, she felt as if she were being retaliated against for speaking up about injustices, such as having an overabundance of work, she sets forth no evidence demonstrating that the DLA failed to promote and/or rehire her because she complained about race, national origin, or age discrimination. In this situation, "even if retaliation was a motivating factor in not selecting plaintiff, 'no liability for unlawful retaliation arises if the employee would [not have been selected] even in the absence of the protected conduct.'" *Rios*, 252 F.3d at 380 (quoting *Long*, 88 F.3d at 305 n. 4). Here, Eugene has made no showing that she would have been selected for one of the posted positions in the absence of her engaging in protected activities. "The plaintiff must reveal a 'conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment.'" *Medina*, 238 F.3d at 685 (quoting *Sherrod*, 132 F.3d at 1122). Eugene has not done so. Thus, summary judgment is warranted with respect to Eugene's retaliation claim.

### III. *Conclusion*

Accordingly, Rumsfeld's motion for partial dismissal is GRANTED in part, Rumsfeld's motion for summary judgment is GRANTED, and Eugene's motion for partial summary judgment is DENIED. There exist no genuine issues of material fact with respect to Eugene's claims of race, national origin, and age discrimination or retaliation, and Rumsfeld is entitled to judgment as a matter of law.

IT IS SO ORDERED.

### FINAL JUDGMENT

In accordance with the court's Memorandum and Order signed October 11, 2001, granting Defendant's Motion for Summary Judgment, the court renders final judgment in favor of Donald H. Rumsfeld. Plaintiff Clara Eugene shall take nothing by her suit.

This is a FINAL JUDGMENT.